CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* STATE.

Opinion delivered June 1, 1908.

1. CONSTITUTIONAL LAW—PROTECTION OF CORPORATIONS.—While a corporation is not a "citizen" within section 2 of article 4 of the Constitution of the United States, and section 1 of Fourteenth Amendment, and section 18 of article 2 of the Constitution of Arkansas, securing the privileges and immunities of citizens, it is a "person" within the meaning of the provision of the Fourteenth Amendment that no State shall deprive any person of life, liberty or property without due process, nor deny to any person within its jurisdiction the equal protection of the laws. (Page 423.)

2. SAME—VALIDITY OF DISCRIMINATION AMONG RAILROADS.—Acts 1907, c. 116, providing that railroad companies shall equip their freight trains

with a crew consisting of not less than an engineer, a fireman, a conductor and three brakemen, is not unreasonably discriminatory in exempting from its operation all railroad companies whose lines are less than fifty miles in length.  (Page 424.)

3.  RAILROADS—THREE BRAKEMAN ACT—CONSTRUCTION.—Acts 1907, c. 116, § 2, in providing that "this act shall not apply to any railroad company or officer of court whose line or lines are less than fifty miles in length," intended to eliminate such short lines operated as independent lines, although owned by the company owning the larger line; but if a short line is used as a continuous line with the main line or in any other way as a  part of it, and not as a separate line merely connecting with it, then it is part of the main line, and the act applies.  (Page 428.)

4.  INTERSTATE COMMERCE—VALIDITY OF STATE REGULATION.—Acts 1907, c. 116, requiring railroad companies to equip certain freight trains with at least three brakemen, in so far as it relates to interstate commerce, is not in conflict with any acts of Congress on that subject, and is valid until Congress legislates on the same subject. (Page 431.)

5.  CONSTITUTIONAL LAW—DUE PROCESS.—Acts of 1907, c. 116, requiring railroad companies to equip certain freight trains with at least three brakemen, is not arbitrary or unreasonable within the due process clause of the Fourteenth Amendment.  (Page 434.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

### STATEMENT BY THE COURT.

This appeal involves two cases, but only one will be stated, as there is no material difference between them.  The Prosecuting Attorney of the Sixth Judicial Circuit filed complaint against the defendant, Chicago, Rock Island & Pacific Railway Company, a foreign  corporation alleging a violation of act No. 116 of 1907, which is as follows:

"Sec. 1.  No railroad company or officer of court owning or operating any line or lines of railroad in this State and engaged in the transportation of freight over its line or lines shall equip any of its said freight trains with a crew consisting of not less than an engineer, a fireman, a conductor and three brakemen, regardless of any modern equipment of automatic coupler and air brakes, except as hereinafter provided.

"Sec. 2.  This act shall not apply to any railroad company or officer of court whose line or lines are less than fifty miles

in length, nor to any railroad in this State, regardless of the length of said lines, where said freight train so operated shall consist of less than twenty-five cars, it being the purpose of this act to require all railroads in this State whose line or lines are over fifty miles in length engaged in hauling a freight train consisting of twenty-five cars or more to equip the same with a crew consisting of not less than an engineer, a fireman, a conductor and three brakemen, but nothing in this act shall be construed so as to prevent any railroad company or officer of court from adding to or increasing its crew beyond the number set out in this act.

"Sec. 3. Any railroad company or officer of court violating any of the provisions of this act shall be fined for each offense not less than one hundred dollars nor more than five hundred dollars, and each freight train so illegally run shall constitute a separate offense. *Provided,* the penalties of this act shall not apply during strikes of men in train service of lines involved.

"Sec. 4. All laws and parts of laws in conflict herewith are repealed, and this act shall take effect and be in force thirty days after its passage."

The answer was in six paragraphs, and was as follows:

I.

"For answer defendant says: It admits that it is a corporation engaged in the railroad business and in the transportation of freight over railroad lines in the State of Arkansas. It admits that on the 5th day of May, 1907, it operated and ran a freight train, containing more than twenty-five cars, in Pulaski County, without having equipped the same with as many as three brakemen. It admits that said train was a freight train, No. 42, engine No. 1836, and that said train was operated in an easternly direction from Argenta, Arkansas, to Hopefield, Arkansas, and over a railroad of more than fifty miles in length, but defendant states that said train was engaged in carrying interstate commerce, and was, in fact, being operated from the city of Argenta, in the State of Arkansas, to the city of Memphis, in the State of Tennessee; that Hopefield is an intermediate station between Argenta and Memphis, and it was therefore necessary for said train to pass through Hopefield on its journey from Argenta to Memphis, as aforesaid. It denies that

the operation of said train, in the manner aforesaid, without having equipped said train with as many as three brakemen, was in violation of law; and denies that by so operating said train it became indebted to the State of Arkansas in the sum of $500.00 or in any other sum.

## II.

"And for further defense defendant says: That the act of Arkansas, No. 116, entitled, 'An act to prescribe the mini-mum number of employees to be used in the operation of freight trains in this State, and providing a penalty for the vio-lation of this Act,' approved March 28, 1907, under which it is sought to recover from the defendant in this suit, is uncon-stitutional and void for the following reasons:

"(a)  Said act, in requiring that each freight train con-sisting of more than twenty-five cars in length, and exempting freight trains of less than twenty-five cars in length, grants privileges and immunities to companies and officers of court operating freight trains of less than twenty-five cars in length which are not granted to companies and officers of court operat-ing freight trains of more than twenty-five cars in length, and grants privileges and immunities to conductors and brakemen em-ployed on freight trains of more than twenty-five cars in length which are not granted to conductors and brakemen employed on freight trains of less than twenty-five cars in length, and is therefore contrary to and in conflict with section 18, article 2, of the Constitution of Arkansas.

"(c)  Said act, in applying to freight trains of more than twenty-five cars in length, and exempting freight trains of less than twenty-five cars in length, is a denial of the equal protec-tion of the laws to companies and officers of court operating freight trains of more than twenty-five cars in length. and to conductors and brakemen employed by companies and officers of court operating freight trains of less than twenty-five cars in length, and is, therefore, contrary to and in conflict with sec-tion one of the Fourteenth Amendment to the Constitution of the United States.

## III.

"(a)  Defendant states that there are in the State of Arkan-sas many companies and officers of court owning and

operating lines of railroad more than fifty miles in length and operating thereon freight trains of more than twenty-five cars, and that there are many companies and officers of court owning and operating lines of railroad less than fifty miles in length and operating thereon freight trains of more than twenty-five cars. That, while this defendant owns and operates more than fifty miles of railroad, it also owns and operates, in the State of Arkansas, many branches less than fifty miles in length, over which it operates freight trains of more than twenty-five cars; that the operation of said freight trains over said branches is in all respects similar to the operation of freight trains over lines of railroads of companies and officers of court owning and operating railroads less than fifty miles in length.

"(b)   Said act, in applying to companies or officers of court owning or operating lines of railroad more than fifty miles in length, and exempting companies or officers of court owning or operating lines of railroad less than fifty miles in length, grants privileges and immunities to companies and officers of court owning and operating lines of railroad less than fifty miles in length which are not granted to this defendant and to other companies and officers of court owning and operating line of railroad more than fifty miles in length, and grants privileges and immunities to conductors and brakemen employed by companies and officers of court owning and operating lines of railroad more than fifty miles in length which are not granted to conductors and brakemen employed by this defendant and other companies and officers of court owning and operating lines of railroad less than fifty miles in length, and is therefore contrary to and in conflict with section 18, article 2, of the Constitution of Arkansas.

"(c)   Said act, in applying to companies or officers of court owning or operating lines of railroad of more than fifty miles in length and exempting companies or officers of court operating lines of railroad of less than fifty miles in length, is a denial of the equal protection of the laws to this defendant and other companies and officers of court operating lines of railroad more than fifty miles in length, and is contrary to and in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States.

"(d) Said act, in applying to this defendant and to other companies and officers of court operating lines of railroad more than fifty miles in length and· exempting companies and officers of court owning and operating lines of railroad less than fifty miles in length, is a denial of the equal protection of the laws to conductors and brakemen employed by companies or officers of court owning and operating lines of railroad less than fifty miles in length, and is therefore contrary to and in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States.

## IV.

"Defendant alleges that it operates within the State of Arkansas six hundred and fourteen miles of railroad; that said line of railroad consists of main track and several branches of·less than fifty miles in length; that it operates over said lines of railroad an average of thirty-five freight trains per day, many of which trains are of more than twenty-five cars in length; that some of said trains are operated upon its main line, and some of said trains are operated upon its branches of less than fifty miles in length; that the fines imposed by said act of Arkansas, No. 116, approved March 28th, 1907, are such that if defendant failed to comply with said act on each of its freight trains over twenty-five cars in length operated in the State of Arkansas, the fines to which it would be subject would amount to a large sum, towit, about $12,500 per day, and, if continued during the time necessary to test the validity of said act, would amount to a confiscation of its entire property within the State of Arkansas; that the fines imposed by said act are therefore so excessive and burdensome as to deprive the defendant of its right to have the validity of said act tested by the courts, and have the ·effect of depriving the defendant of its property without due process of law and of denying to it the equal protection of the laws; that said act is therefore contrary to and in conflict with article two, section nine, of the Constitution of Arkansas, and of ·section one of the Fourteenth Amendment to the Constitution of the United States.

## V.

"Defendant states that its said train was equipped with automatic couplers and air brakes, so that the cars thereof could

be coupled and uncoupled without the necessity of brakemen going between the cars, and could be stopped by the application of the air brakes by the engineer of said train, without the intervention or assistance of the conductor or brakemen, as required by act of Congress and the order of the Interstate Commerce Commission made thereunder; that it had employed on said train a conductor and two brakemen, and that the employment of another brakeman on said train was unnecessary, because there were no duties connected with the running and operating of said train to be performed by a third brakeman, and said act, in attempting to require the defendant to employ three brakemen on said train, attempted to require the defendant to expend a large amount of money for a useless and unnecessary purpose and to deprive the defendant of its property without due process of law, and is therefore in violation of and in conflict with section one of the Fourteenth Amendment to the Constitution of the United States.

## VI.

"(a)    Defendant further states that it is a common carrier of freight, engaged in interstate commerce, and that its said train was being used solely for the transportation of freight from points in the State of Arkansas, and points in other Territories and States west of the State of Arkansas, to Memphis, in the State of Tennessee, and other points beyond the State of Arkansas, and therefore was engaged in moving interstate traffic into and through the State of Arkansas, and that said act, in requiring the defendant to equip said train with three brakemen, is an attempt to regulate commerce among the several States, and is therefore contrary to section eight, article one, of the Constitution of the United States, and is contrary to and in conflict with the act of Congress, approved March 2d, 1893, and amended April 1, 1896, entitled "An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic coupler and continuous brakes, and their locomotives with driving wheel brakes, and for other purposes," and the act of Congress approved June 11, 1906, entitled "An act relating to liability of common carriers engaged in commerce between the States and between the States and foreign

nations to their employees," and the act of Congress, approved June 29, 1906, entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February 4, 1887, and all acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission," and other acts of Congress, which were pased pursuant to the power vested in Congress by said section eight, article one, of the Constitution of the United States.

"(b)   Defendant states that said act is void, because the subject-matter thereof has been legislated upon by the Congress of the United States, by the acts hereinbefore referred to."

The State demurred to paragraphs I, II, III, IV and VI of said answer, and the demurrers were sustained.

The case was then tried on the defense set out in the 5th paragraph of the answer. The defendant adduced testimony tending to prove the truth of the allegations therein made and to show that the legislative requirement to employ three brakemen on its freight trains required a large expenditure of money for a useless and unnecessary purpose.

On the other hand, the State introduced testimony tending to prove that the employment of three brakemen was necessary for the safety of the trainmen and of the public in the movement of freight trains as operated on defendant's railroad. This testimony was given by experienced train men. They explained that there is an increased amount of work to be done since the adoption of the air brakes and automatic couplers, notwithstanding the brakemen are relieved of the duty of stopping trains (except in emergencies) by hand brakes. This is due to the increased tonnage of the trains, the increased capacity of cars, the increased number of cars in trains, the increased power of heavy engines, and the additional reports required to be made by conductors and inspections to be made by conductors and brakemen. In addition to these reasons, it is a daily occurrence for drawheads to pull out, owing to the heavy draught of the engines and the lack of corresponding strength of drawheads to meet them; and this usual happening requires the service of two, and frequently three men to properly chain up the cars, especially in the night-time. Much of the conductor's time is taken up with making his reports, and he cannot, under the

present system, give as much time to the physical handling of the train as under the old system.

When there is a break in the train, or for any other cause it is stopped between stations, it is at once the duty of the conductor to send a brakeman back to flag approaching trains from the rear, and frequently it is his duty to send another brakeman forward to flag trains approaching from that direction. The necessity for signalling for these purposes frequently reduces the force to the conductor, engineer and fireman, unless three brakemen are provided. Safe operation and the rules of the company require that the engineer and fireman remain at their post in the engine.

Trains are frequently stopped at public crossings, and are frequently switched across public crossings; and oftentimes it occurs that the safety of the public requires the posting of signal men at these crossings. In switching, the services of brakemen are required to work the automatic couplers and connect and disconnect the air hose, and in the opinion of these witnesses the safety of the train crew is promoted by having three brakemen to do the switching, in addition to which the train movements are made with more certainty and dispatch and with less danger of accidents, and the freight is handled more speedily.

Other reasons are given why the emergencies and hazards of the business require the employment of three brakemen to promote the safety of the train men handling the train, of train men and passengers on other trains, and the public crossing the tracks. It was shown that the St. Louis, Iron Mountain & Southern Railway Company, which operates the largest mileage of any railroad in the State, uses three brakemen, except on one branch, and the other railroads operating in the State use two brakemen.

The court found for the State against the railroad company in both cases, and the railroad company has appealed.

*Buzbee & Hicks,* for appellant.

1. The act is unconstitutional because repugnant to art. 2, § 18, Const. Arkansas, and Fourteenth Amendment, § 1, Const. United States. 75 Ark. 542; *Waters Pierce Oil Co. v. City of Hot Springs,* 85 Ark. 509; 118 U. S. 356; 165 U. S. 150; 174 U. S. 96; 183 U. S. 79; 184 U. S. 540; 81 Ark. 304; 185 U. S. 203; 207 U. S. 497.

2.   It is unconstitutional because it undertakes to regulate interstate commerce, and is repugnant to art. 1, § 8, Const. U. S.; 93 U. S. 102; 95 U. S. 487; *Id.* 465; 9 Wheaton, 1; 162 U. S. 197, 212; 196 U. S. 1; 31 U. S. Stat. at Large, 1446; 22 How. 227; 93 U. S. 274; 94 U. S. 238; 96 U. S. 387; 124 U. S. 465; 129 U. S. 148; 158 U. S. 98; 167 U. S. 633; 207 U. S. 494.

3.   The act, as applied to interstate commerce, is arbitrary, unreasonable and contrary to art. 1, § 8, and the due process clause of § 1 of the Fourteenth Amendment, Const. United States. 95 U. S. 465; 201 U. S. 321; 202 U. S. 543.

*William F. Kirby,* Attorney General, *Lewis Rhoton,* Prosecuting Attorney, and *W. L. Terry,* for appellee.

1.   Appellant's first contention is based upon a misconception of the act, *i. e.,* that the classification is based upon ownership, and is therefore an unlawful discrimination, and consequently invalid, whereas it is clearly based upon the length of the road and the number of cars in the train, which is a legitimate basis of classification.   The act is therefore not repugnant to the clauses of the State and Federal constitutions referred to.   If one construction would render the act invalid and another would make it valid, it is the duty of the court to give it that construction which will make it valid.   64 L. R. A. 644; 201 U. S. 501.   See, also, 94 U. S. 164; 125 U. S. 692; 186 U. S. 264; 32 L. R. A. 857; 33 *Id.* 319; 207 U. S. 88.   A statute dividing railroads into classes according to their length operates uniformly on each class.   125 U. S. 680; 54 Ark. 114; 156 U. S. 661; 65 Ark. 248.   If the Legislature has the right to classify at all, it has the right to say where the line of demarcation shall be drawn.   The equal protection guarantied by the 14th Amendment does not prohibit classification.   174 U. S. 103; 113 U. S. 27; 127 U. S. 210; 169 U. S. 385; 64 Ark. 90.   Art. 2, § 18, Const. Arkansas does not apply to corporations.   172 U. S. 561; 204 U. S. 362.   And the 14th Amendment does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate.   It merely requires that all persons subject to such legislation shall be treated alike under like circumstances and conditions, both

in the privileges conferred and the liabilities imposed. 120 U. S. 71; 165 U. S. 182. While not without limit, the power of the State to distinguish, select and classify objects of legislation must necessarily have a wide range of discretion. 170 U. S. 294. The question is not whether the Legislature might have adopted some other classification, but whether the one adopted is purely arbitrary, and bears no relation to any legitimate purpose sought to be secured. 207 U. S. 354. Even if there were reason to doubt the efficiency of the legislation, still that was a matter for the Legislature to determine. 165 U. S. 632.

2. Appellant's contention that the act is an attempt to regulate interstate commerce is an erroneous assumption and is not supported by reason or authority. 163 U. S. 308; 173 *Id.* 290. Congress has never undertaken to legislate as to what shall constitute a full crew on a freight train engaged in interstate commerce; hence the State is free to act. 196 U. S. 13; 173 *Id.* 292; 205 *Id.* 10; 95 *Id.* 465; 124 U. S. 471; 207 *Id.* 494; 85 Ark. 284; 207 U. S. 328; 173 U. S. 291, 296.

3. The following propositions are sustained by authority: (1) The police power resides in the State, and is not yielded to the Federal government. Cooley on Const. Lim., p. 831; 169 U. S. 683. (2) States may enact police regulation concerning interstate commerce unless in conflict with a law of Congress. 5 How, U. S. 579. (3) The interference must be direct, not merely incidental. 183 U. S. 518; 179 *Id.* 349; 166 *Id.* 430; 158 *Id.* 104; 173 *Id.* 297; 124 *Id.* 473; 173 *Id.* 297. (4) The matter of regulating appliances of cars, qualification of trainmen and crews is not one requiring a uniform rule, but may be regulated by the State. 165 N. Y. 629; 124 U. S. 465; 128 *Id.* 96. (5) So long as Congress has not legislated, States may exercise their rights under the police power. 191 U. S. 477, 490; 128 *Id.* 99; 169 *Id.* 133; 166 *Id.* 430; 141 *Id.* 61; 78 Fed. 695; 17 Wall. 560. (6) The State has the right to secure the safety of passengers on interstate trains while within its borders. 124 U. S. 465; 165 U. S. 629; 128 U. S. 96; 27 Vt. 140; 163 U. S. 142; 169 *Id.* 133. (7) The rules prescribed by the State for the management and operation of railroads are not regulations of commerce. 169 U. S. 133-7;

124 *Id.* 465.; 128 *Id.* 96; 163 *Id.* 299; 173 *Id.* 285; 133 Ind.'69-80.   (8) As to the regulation of pilots and State laws, see 12 How. 290-315; 21 How. 184-7; 2 Wall. 450-9; 195 U. S. 332-341; 14 Fed. 792-794.   (9) If within the legislative power, courts cannot inquire into the wisdom or policy of the act.   58 Ark. 414; 128 Ind. 555; 145 *Id.* 439; 147 *Id.* 633; 64 L. R. A.' 643.

HILL, C. J., (after stating the facts).   The railroad company contends that the act is unconstitutional for three reasons, which will be disposed of in the order presented. by counsel for appellant.

1.   That the act is unconstitutional because repugnant to sec. 18, art. 2 of the Constitution of Arkansas, and sec. 1 of the 14th Amendment to the Constitution of the United States.

Section 18, article 2 of the Constitution of Arkansas reads as follows:   "The General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens."   Section 2 of article 4 of the Constitution of the United States provides that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."   It has long been settled that a corporation is not a citizen within the meaning of this clause of the Constitution.   *Paul* v. *Virginia,* 8 Wall. 168; *Pembina Consolidated Silver Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Blake* v. *McClung,* 172 U. S. 239.

It is also provided in section 1 of the Fourteenth Amendment that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; and it has also been held that this clause does not reach to corporations.   *Norfolk, etc., Ry. Co.* v. *Penn,* 136 U. S. 114; *Western Turf Assn.* v. *Greenberg,* 204 U. S. 359; *Waters-Pierce Oil Co.* v. *Hot Springs,* 85 Ark. 509.

The reasoning which takes corporations out of the "privileges and immunities" accorded citizens of one State in the several States equally excludes corporations from the protection of section 18 of art. 2 of the State Constitution.

But corporations are persons within the meaning of the 14th Amendment, which provides that no State shall deprive

any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. *Blake* v. *McClung,* 172 U. S. 239; *Santa Clara County* v. *Southern Pacific Ry. Co.,* 118 U. S. 394; *Gulf, Colorado & Santa Fe Ry. Co.* v. *Ellis,* 165 U. S. 150; *Smyth* v. *Ames,* 169 U. S. 466.

The argument against the act under the equal protection clause is two-fold: (a) That the classification of railroads over and under fifty miles in length is arbitrary and without just relation to the object to be accomplished; and (b) that the 3d paragraph of the answer, to which a demurrer was sustained, alleged that many companies owned and operated lines of railroad in this State less than fifty miles in length, and that the defendant owned and operated many branch lines of less than fifty miles in length, over which it operates freight trains of more than twenty-five cars, and that the operation of its freight trains over said branches is in all respect similar to the operation of freight trains over many short lines of railroad which are operated by companies owning less than fifty miles of railroad; and consequently the act is offensive to the constitutional provision requiring the equal protection of the law to all persons under like and similar circumstances.

(a.) In discussing the duty of a court to whom is addressed an appeal to strike down legislation as so arbitrary that it amounts to a denial of the equal protection of the law, Mr. Justice Holmes well said: "There is no dispute about general principles. The question is whether this case lies on one side or the other of a line which has to be worked out between cases differing only in degree. With regard to the manner in which such a question should be approached, it is obvious that the Legislature is the only judge of the policy of a proposed discrimination. * * * When a State legislature has declared that in its opinion public policy requires a certain measure, its action should not be disturbed by the courts under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. * * * Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that

legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a decree as the courts." *Missouri, K. & T. Ry. Co.* v. *May,* 194 U. S. 267.

Applying this principle here, can the court clearly see that there is no fair reason for this law which would not require with equal force its extension to all railroads, irrespective of their length, where the freight trains consist of more than twenty-five cars? It will be noticed that the act does not apply to any line of railroad, however long, unless the freight trains shall consist of more than twenty-five cars. It thereby permits both long and short lines. to run short freight trains without being amenable to this act; and this question is whether the classifications of the railroads into long and short lines, divided at the point of fifty miles, is a just and reasonable one.

That there is a marked difference in the management, control and operation of long and short line railroads is a matter of common knowledge, known to all observers. Great trunk lines have been constructed through the country that are highways of interstate and international commerce. Both freight and passenger trains pass back and forth upon them every few minutes, and great speed is attained in their movement. On the other hand are found many short lines which supply the needs of small communities, and upon such lines there are but few trains, and those of light weight and of few coaches and cars in comparison with the magnificent passenger and tremendous freight trains moved upon the large trunk lines. Bringing the comparison more nearly home, there are found in this State important through lines, upon which are moved many passenger and freight trains daily; and there are also found many short lines of railroad, some owned and operated by independent companies and some operated as branches and feeders to the larger companies by whom they are owned or controlled. Upon these small roads the necessity of protecting trains from collision from either end is materially less than upon the great lines where the trains are more numerous, heavier and accustomed to greater speed. The movement of a train is necessarily less fraught with danger where there is no other train upon the line, or but few, than upon a line where trains are moving every few minutes, or every few hours. Short lines are usually lightly constructed, and

carry light rolling stock in comparison to the great systems. These and other matters of common observation of the difference between long and short lines of railroad can afford reasons why the Legislature should leave untouched the short lines of railroad with legislation designed to promote safety in operation of long freight trains.

To approach the question in another way: In *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, Mr. Justice Brewer for the court said: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."

Is there some difference between lines over and under fifty miles in length which bears a just and proper relation to the requirements placed upon them by this act? In one sense, there can be no substantial difference between a railroad forty-nine miles long and one fifty-one miles long; but if there is a just distinction between long and short lines of railroad that will bear classification at all, then it is unobjectionable and necessary to draw the line somewhere, although it may, at the given point, be arbitrary.

The Supreme Court of the United States in *New York, N. H. & H. Rd. Co.* v. *New York,* 165 U. S. 628, dealt with this point. There was a statute of New York applying to railroads over fifty miles in length, forbidding them to heat their cars with stoves or furnaces kept inside of the cars or suspended therefrom; and the court through Mr. Justice Harlan said: "But it is contended that the statute is repugnant to the clause of the Fourteenth Amendment forbidding a State from denying to any person within its jurisdiction the equal protection of the laws. This contention is based upon that clause of the statute declaring that it shall not apply to railroads less than fifty miles in length. No doubt, the main object of the statute was to provide for the safety of passengers traveling on what are commonly called trunk or through lines, connecting distant or populous parts of the country, and on which the perils incident to traveling are

greater than on short local lines. But, as suggested in argument, a road only fifty miles in length would seldom have a sleeping car attached to its trains; and passengers traveling on roads of that kind do not have the apprehension ordinarily felt by passengers on trains regularly carrying sleeping cars or having many passenger coaches, on account of the burning of cars in case of their derailment or in case of collision. In any event, there is no such discrimination against companies having more than fifty miles of road as to justify the contention that there has been a denial to the companies named in the act of the equal protection of the laws. The statute is uniform in its operation upon all railroad companies doing business in the State of the class to which it is made applicable." There can be no distinction in principle between that legislation and this, and the classification there, identical with this, was sustained on the difference between the danger of operation on trunk lines and local lines.

*Cotting* v. *K. C. Stock Yds. Co.,* 183 U. S. 79, is pressed upon the court as authority declaring void the classification here made. While the principles involved in the Cotting case were the same as those involved here and in the New York case, *supra,* the facts required a different application of them. In the first place, the subject of regulation here and in the New York case was common carriers on public highways, which are burdened with obligations which do not rest upon individuals and corporations not thus employed, as pointed out in the Cotting case; and, in the second place, the act there was so framed as to apply to one company, although there were other companies engaged in like business and similarly situated in the State of Kansas. The classification was made to depend solely upon the amount of business, and fell upon one company alone, while other companies similarly situated, different only in the amount of business transacted, escaped. There was no question therein of public safety or the safety of men engaged in public service.

Other cases cited can easily be differentiated from this case and the New York case; but the differences are not important, for the principles invoked in all of them are the same. The difficulty is in the application of them to the given statute, and this was well explained in *Atchison, Topeka, etc., Rd. Co.* v. *Matthews,* 174 U. S. 96: "While cases on either side and

far away from the dividing line are easy of disposition, the difficulty arises as the statute in question comes near the line of separation.   Is the classification or discrimination prescribed thereby purely arbitrary, or has it some basis in that which has a reasonable relation to the subject sought to be accomplished? It is not at all to be wondered at that as these doubtful cases come before this court the justices have often divided in opinion. To some the statute presented seemed a mere arbitrary selection; to others it appeared that there was some reasonable basis of classification.   *   *   *   In some of them the court was unanimous.   In others it was divided; but the division in all of them was, not upon the principle or rule of separation, but upon the location of the particular case one side or the other of the dividing line."

It is not for the court to say whether the classification is wise or unwise, but merely whether it has a reasonable relation to the object sought to be accomplished, provided that the object is one with which the Legislature had power to deal.   If the classification is not arbitrary, but within reasonable limits as heretofore defined, then the courts must sustain it.   The court regards this act as falling within that class.

(b.)   The 3d paragraph of the answer, to which a demurrer was sustained, alleged that the defendant owned and operated many branch lines less than fifty miles in length, over which it operates freight trains of more than twenty-five cars, and that the operation of said freight trains over said branches is in all respects similar to the operation of freight trains over other lines of railroad of less than fifty miles in length which are owned and operated by companies owning less than fifty miles of railroad; and that the act is for this reason offensive to the provision requiring the equal protection of the law to all persons under like and similar circumstances.

The determination of this defense depends upon the construction of the act.   If the act places the branch lines of appellant railroad company which are less than fifty miles in length, and which are operated similarly in all material respects to independent lines, within its terms, and leaves without its terms the short lines of railroad which are operated similarly to said branch lines but owned by independent companies (and the de-

murrer to the 3d paragraph of the answer admits this to be true), then said act would fall on the other side of the line, and be governed by *Yick Wo* v. *Hopkins,* 118 U. S. 356, and *Cotting* v. *Kansas City Stock Yds. Co.,* 183 U. S. 79. If it does not place such branches within its terms, then there is no discrimination between them and other short lines independently operated, and the matters set forth in the 3d paragraph go for naught.

In construing the act, the court must bear in mind that "where one construction will make a statute void for conflict with the Constitution, and another would render it valid, the latter will be adopted, though the former at first view is otherwise the more natural interpretation of the language." 2 Lewis's Sutherland on Statutory Construction, § 498. The Supreme Court of the United States stated the same principle as follows: "But if there were room for two constructions, both equally obvious and reasonable, the court must, in deference to the legislature of the State, assume that it did not overlook the provisions of the Constitution, and designed the act of 1871 to take effect. Our duty, therefore, is to adopt the construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the Constitution." *Grenada Co. Supervisors* v. *Grogden,* 112 U. S. 261. These authorities were recently approved by this court, which thus stated the principle: "It is the duty of the court to give the statute such construction, if reasonably consistent with the language employed, as will render it constitutional and valid." *Western Union Tel. Co.* v. *State,* 82 Ark. 309.

The first section of the act prohibits any railroad company (or officer of court), owning or operating any line or lines of railroad and engaged in the transportation of freight over its said line or lines from equipping its freight trains with less than a full crew as therein described. This lays its mandate upon the company which is engaged in the transportation of freight and which owns or operates a line or lines of railroad, regardless of other safety equipment of its trains.

The second section eliminates all railroad companies whose line or lines are less than fifty miles in length, and eliminates all freight trains on any line, regardless of length, where the train consists of less than twenty-five cars. And then, to be sure that

the intent is plain, the act declares its own purpose to be "to require all railroads in this State whose line or lines are over fifty miles in length engaged in hauling a freight train consisting of twenty-five cars or more to equip the same with a crew consisting of not less than an engineer, a fireman, a conductor and three brakemen." This legislation is pointed at two things: long lines of railroad and long freight trains. The length of the road is immaterial if the train is short—one which the Legislature thought could be safely handled by the ordinary crew with two brakemen. If the freight train was long, then a further consideration moved the Legislature; such freight trains might be safely handled on a small line, where the traffic was light, the hazard of the service small, and the danger from collision with other trains remote; but they could not be safely handled with such crew upon long lines, not on account of the length of the line *per se,* but on account of the well known heavier traffic and greater train movement upon long lines, in consequence of which the danger is thought to be greater. If, as admitted by the demurrer to the third paragraph, there are many independent short lines in the State similar in operation to the branch lines of the appellant company, then the only distinction between them and the branch lines of a company of longer mileage would be in the ownership.

Does the elimination in the second section mean railroads less than fifty miles, or does it mean the elimination of companies whose roads are less than fifty miles in length? It must be confessed that the act is not clear on this subject, and it is fairly open to either construction, and each has been plausibly presented. In obedience to the rules of statutory construction heretofore stated, where an act is fairly susceptible of either of two constructions, one of which would render the act invalid, it is then the duty of the court, out of deference to the Legislature, to adopt that construction which will render it valid. To adopt the construction that the act eliminates from its operation railroad lines which are less than fifty miles in length because they are owned by a company not owning more than fifty miles of road, and does not eliminate lines which are less than fifty miles in length and operated separately but in all respects similar to the other lines, because they may be owned by some company

owning longer lines in the State, would be plainly unconstitutional under the authorities heretofore reviewed.

It may be argued that the Legislature intended to treat these short lines and branches of the larger lines as part of the large systems. If the railroad companies operate them as part of their systems, certainly they are within the act, and the similarity with the short independent lines does not then exist. If the railroad companies operate them separately as independent lines are operated, then there can be no just reason in principle for a distinction between them and the separate lines. Such distinction would then be based solely upon ownership. This legislation can only be supported on account of its supposed promotion of the safety of the public and the employees of a public service corporation, and a distinction based on ownership is wholly untenable.

The proper construction to place on the act, and that renders it valid, is: If the short line is in fact used as a continuous line with the main line, or in any other way as a part of it, and not as a separate line merely connecting with it, then it is a part of the line. But if it is a mere connecting line, separately operated—operated as an independent short line is operated—although owned by the company owning the larger line, then it would not be within the statute.

2. It is said that the act is unconstitutional because it is an attempt by the State to regulate interstate commerce, contrary to the power vested in Congress in section 8, article 1, of the Constitution of the United States. In paragraph six of the answer are set forth various statutes which have been passed by Congress in regulation of interstate traffic. Briefly stated, they are the "Safety Appliance Act," the "Employers' Liability Act" (recently declared unconstitutional in *"The Employers' Liability Cases,"* 207 U. S. 463) and acts amendatory of the Interstate Commerce Act. The contention is made that these acts have excluded State regulation upon the subject-matter of the act in question.

In the regulation of interstate commerce there are three powers: The exclusive State power, exclusive National power, and the concurrent power.

First, those in which the power of the State is exclusive.

These "concern the strictly internal commerce of the State; and while the regulations of the State may affect interstate commerce directly, their bearing upon it is so remote that it cannot be termed, in any just sense, an interference." This embraces construction of highways, turnpikes, railroads and canals between points in the same State, and the regulation of toll for the use of the same, and the bridging and the regulation of non-navigable streams and control of navigation of strictly internal waters and other strictly internal transportation. . Second, where Congress has not acted, in its silence the States may act on subjects local in their nature, but which incidentally affect or facilitate commerce; and this is the concurrent power. It involves regulation of pilots; quarantine and inspection laws and the policing of harbors; the improvement and bridging of navigable streams (subject to an overseeing by Congressional legislation that the improvement does not interfere with interstate and foreign commerce); the establishment of ferries; in a word, that "immense mass of legislation" usually referred to as the police power of the State, which may affect incidentally or facilitate foreign or interstate commerce, and regulate, for the protection of the health, morals or general welfare of the State, the instrumentalities of commerce, so long as Congress itself does not cover the subject with regulations which conflict with the State regulations. Third, where the laws are from their nature national in character, instead of being of a local nature and affecting interstate commerce but incidentally, the silence of Congress indicates that it wills that such commerce shall be free and untrammeled by State legislation, to this extent—quick or dead— the power of Congress is exclusive. *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204; *Gulf, C. & S. F. Ry. Co.* v. *Hefley,* 158 U. S. 98; Judson on Interstate Commerce, secs. 22-23.

The question here is, first, to what class this act belongs? and second, does it conflict with any act of Congress, or is the silence of Congress on the subject in the class in which the silence of Congress is as potent as its action?

*Smith* v. *Alabama,* 124 U. S. 465, answers as to the character of these laws. It is therein said: "It is among these laws of the States, therefore, that we find provisions concerning the

rights and duties of the common carrier of persons and merchandise, whether by land or water, and the means authorized by which injuries resulting from the failure properly to perform their obligations may be either prevented or redressed. * * * The failure of Congress to legislate can be construed only as an intention not to disturb what already exists, and is the mode by which it adopts, for cases within the scope of its power, the rule of the State law, which, until displaced, covers the subject."

This explanation of the character of legislation permitted the State in regulating the instrumentalities of interstate commerce shows that the act in question belongs to the concurrent class—that is, that field of legislation in which it is competent for both the State and Nation to enter; but the legislation of the State must give way to that of the Nation when they conflict, as stated in *Smith* v. *Alabama*: "It follows that any legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority."

It is insisted that because, in the acts set forth in the answer, Congress has legislated on safety appliances and other means to promote the safety of freight trains engaged in interstate commerce, the action of the State upon this subject is excluded because the non-action of Congress upon this precise question is equivalent to positive action by Congress that there shall be no legislation over the subject except what it enacts when it once touches the subject. But this argument has been rejected by the Supreme Court of the United States, in *Missouri, K. & T. Ry. Co.* v. *Haber*, 169 U. S. 613. The court said: "May not these statutory provisions stand without obstructing or embarrassing the execution of the act of Congress? This question must of course be determined with reference to the settled rule that a statute enacted in execution of a reserved power of the State is not to be regarded as inconsistent with an act of Congress passed in the execution of a clear power under the Constitution, unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or stand together." And again, in the same case, the court said: "These cases all proceed upon the ground that the regulation of the

enjoyment of the relative rights, and the performance of the duties, of all persons within the jurisdiction of a State belong primarily to such State under its reserved power to provide for the safety of all persons and property within its limits; and that, even if the subject of such regulations be one that may be taken under the exclusive control of Congress, and be reached by national legislation, any action taken by the State upon that subject that does not directly interfere with rights secured by the Constitution of the United States, or by some valid act of Congress, must be respected until Congress intervenes."

In *Gulf, C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98, the same thought was thus expressed: "Generally, it may be said in respect to laws of this character that, though resting upon the police power of the State, they must yield whenever Congress, in the exercise of the powers granted to it, legislates upon the precise subject-matter, for that power, like all other reserved powers of the States, is subordinate to those in terms conferred by the Constitution upon the nation."

There is no direct interference with the legislation of Congress relied upon by the act in question. Each may stand, each cover its own field; and there is no apparent ground of conflict possible in the operation of the two acts, for they do not reach the "precise subject-matter."

3.  It is contended that the act as applied to interstate commerce is arbitrary and unreasonable, and is contrary to the due process clause of section 1 of the 14th Amendment. These contentions are embraced in the 2d, 4th and 5th paragraphs of the answer. As far as the 4th paragraph is concerned, that has been disposed of by the construction placed upon the act. So much of the second paragraph as is herein relied upon is presented in another form in the 5th paragraph, the substance of which is that the requirements of the act constitute an unnecessary and burdensome expense, and are an arbitrary and unreasonable interference with the interstate commerce and the right of the company to regulate its own affairs.

Much testimony was taken under the 5th paragraph, the substance of which is in the statement. It is not for the court to determine which side of that controversy has the best of the argument; that was for the Legislature. If it is a fair subject

of controversy whether the act is promotive of the safety of employees of a common carrier on a public highway, and of the passengers and travelers on said highway, then the action of the legislative department in the premises is conclusive, and this evidence clearly shows that it is a matter within the legislative discretion. It is only where the burden on the carrier is arbitrary and without any corresponding benefit to the public that the courts can interfere. This subject was recently discussed at some length by this court in *La. & Ark. Ry. Co.* v. *State,* 85 Ark. 12.

Appellant cites *Houston & Tex. Central Ry. Co.* v. *Mayes,* 201 U. S. 321, to sustain its contention that the act is an unreasonable interference with interstate traffic. There is much difference between the act condemned there and the one here. That act was not dealing with the safety of train employees or the public, but was upon the subject of furnishing cars. The turning point of the decision was that the act made no exception in case of sudden congestion of traffic and actual inability to furnish cars by reason of their temporary and unavoidable detention in other States, or in other places beyond its line, and made no allowance for interference of traffic by wrecks or other accidents. The act in question has no such unbending provisions. It does not apply to any train which consists of less than twenty-five cars nor to short independent or branch lines, and only requires upon the long lines and the long trains one more brakeman than the appellant company now has employed, which number another road, of larger mileage than appellant road in this State, now employs; and further provides that the penalties of the act shall not be incurred during strikes of men in train service of the lines involved.

The court fails to find any constitutional objection to the act.

Judgment affirmed.