HENRY C. GEORGE, Admr. of the estate of ANDREW P. GEORGE, deceased, Defendant in Error, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Plaintiff in Error.

Kansas City Court of Appeals, May 4, 1914.

1. **NEGLIGENCE: Railroads: Statute Requiring Blocking of Switches: Meaning of Term "Yards."** In Sec. 3163, R. S. 1909, relating to the blocking of switches, the term "yards" includes the place or piece of ground surrounding a depot or station which is used to switch or stand cars thereon for the purpose

of loading or unloading freight at that point and for other purposes connected with the railroad business transacted at such station. While the term "yard" may technically have a narrow meaning yet, as it in common parlance has a broader meaning, and there is nothing in the statuee showing an intention to use the term in a limited sense, but on the contrary there is enough to indicate that the broad and general rather than the limited, meaning was intended, such term should be taken and considered as used in its usual ordinary, and general signification.

2. ———: ———. Said statute does not contemplate that a railroad company, erecting a switch after September 1, 1907, shall have a reasonable time, after putting such switch in use, in which to block it, but that it must be blocked when erected and put in use. So that, where a switch was erected and shown by all the evidence to have been in use after the statute was in force, a defense that the railroad had not had a sufficient time to block it after putting it in use, was properly stricken out.

3. ———: ———: **Defense of Contributory Negligence.** Sec. 3164. R. S. 1909, takes away the defense of contributory negligence in a case based on the failure to obey the statute in reference to blocking.

### On Rehearing.

1. **PLEADING: Cause of Action: Appellate Court.** If a petition purports to state a cause of action on a statute and such statute is void for uncertainty, then no cause of action is stated and advantage may be taken of it for the first time in the appellate court.

2. **STATUTE: Uncertain or Impossible to Execute: Void.** A statute may be couched in such unintelligible, contradictory or inconsistent terms, as will render it void. And though its terms are certain and intelligible, yet, on the face of it, compliance may be impossible and for that cause also it will be void.

3. ———: **Best Known Appliances and Inventions: Validity.** A statute requiring railway companies to provide the "best known appliances or inventions to block switches in railroad yards to prevent as far as possible the feet of employees or other persons from being caught therein," is not void, either for uncertainty, or impossibility of compliance.

Error to Adair Circuit Court.—*Hon. Nat. M. Shelton,*
Judge.

AFFIRMED.

*Campbell & Ellison, J. G. Trimble, Willard P. Hall*
for plaintiff in error.

*Charles E. Murrell* and *Fogle & Fogle* for defend-
ant in error.

TRIMBLE, J.—On the 7th of November, 1907, An-
drew P. George, a brakeman on appellant's road, hav-
ing switched, out of his train, a car from the main line
to the house track at defendant's station in Kirksville,
was engaged in recoupling the two separated portions
of the train, from which the car had been switched,
when his foot caught in an unblocked frog where he was
working, and, as a result thereof, he was run over and
instantly killed.

He was an unmarried man, over 21 years of age,
living with his mother, and having several brothers and
sisters.

The plaintiff is his administrator, and in this
action sues to recover damages, in the sum of ten
thousand dollars, for his death.

The cause of action is based upon a failure to
obey section 3163, Revised Statutes 1909, which re-
quired appellant, on or before September 1, 1907, "to
adopt, put in use and maintain the best known appli-
ances or inventions to fill or block all switches, frogs
and guard rails on its road, in all yards, divisional and
terminal stations, and where trains are made up, to
prevent, as far as possible, the feet of employees or
other persons from being caught therein." Section
3164, Revised Statutes 1909, takes away from a defen-
dant railroad company, violating or failing to obey
said statute, the defense of contributory negligence.

The answer was a general denial containing, in addition two special defenses, namely: 1. That the track at the frog in question had been laid since September 1, 1907, but just recently and immediately before the 7th of November, 1907 the date of the injury, and was at that time still in process of construction and defendant had not a reasonable time in which to ballast and surface the track and block said frog. 2. Contributory negligence on the part of the deceased. The court, on motion of plaintiff, struck out said special defenses, the defendant excepting.

Under appropriate instructions the question whether the frog was blocked or not, as well as the question whether deceased's foot was caught therein because of the absence of such block, were submitted to the jury and, by its verdict in plaintiff's favor, these questions must be considered as being now beyond dispute.

·The assignments of error with which we have to deal, are, in substance, that the statute does not apply to this case that the court erred in striking out the two special defenses and in excluding the evidence offered in support thereof, and that the court erred in not sustaining a demurrer to the evidence.

The point that the statute does not apply to this case is based upon the claim that the frog in question was not located at a point where it is required to be blocked, defendant contending that the statute requires only those frogs and switches to be blocked which are situated "in yards, divisional and terminal stations, and where trains are made up" and that the frog in question was not situated in any of such places but on defendant's main line.

The deceased was killed at a point about one hundred yards west of defendant's depot and station in Kirksville. The frog in which his foot was caught was at the switch where the house track left the main line and thence ran east around the south side of the depot

and joined the main line again at another switch about one hundred yards east of the depot. From this east switch there was a stock track lying north of the main track (which ran east and west), and leading west to, the stock yards. A short distance west of said east switch there ran from said house track, a transfer track, lying south of the house track and leading around in a curve to the south east to where it connected with the Wabash railroad which intersected defendant's line a short distance west of the place where deceased was killed. South of and parallel to this transfer track, and also leading from the house track, was still another track which ran around past the electric light plant down to where it also joined the Wabash railroad. From this last track a spur track ran out to some coal sheds. Defendant's water tank was located on the main line near the intersection thereof with the Wabash railroad.

The foregoing statement of the location of the depot and various tracks, with reference to the place where deceased was killed, is made for the reason that it bears on the question whether the frog where deceased was killed was within a "yard" or place where the statute requires it to be blocked. The statute is a penal statute and must be strictly construed. Hence if the place where the injury occurred is not within one of the places enumerated by the statute, it can have no application.

Kirksville was not a divisional or terminal station, and it is defendant's contention that the term "yards" as used in the statute has reference only to such yards as are maintained at a railroad's divisional or terminal stations, or where many parallel tracks are maintained and cars are habitually and constantly switched back and forth therein; and that said term "yards" does not mean the grounds, commonly spoken of as yards, used in connection with an ordinary station on the line.

We do not think the term "yards" in the statute should be given such a narrow and limited technical definition, unless there is something in the statute itself requiring such definition. In the absence of anything to show a contrary meaning, words used in a statute should be taken and considered as used in their usual, ordinary and general signification. Everyone knows that every railroad station has a "yard" of its own by which is meant a place or piece of ground, usually within certain reasonable limits though not necessarily inclosed, surrounding the depot or station, and used to switch and stand cars therein for the purpose of loading or unloading freight handled at that point, and for other purposes connected with the railroad business transacted at such station. Such place, in ordinary language, used by the persons in charge of such stations as well as by the public doing business thereat, is termed a "yard." And in it there is always more or less switching to be done in order to deliver and take away cars at said station. Not only is it common knowledge that such place adjacent to a station is called a yard, but there was evidence to that effect. Defendant's definition of the term "yard," while it may mean primarily what defendant contends it does, may also include the larger meaning, since, under that rule, "a yard is a system of tracks within defined limits provided for the making up of trains, *storing of cars and other purposes,* over which movements not authorized by time table, or by train order, may be made subject to prescribed signals and regulations." But even if such definition does not include what is ordinarily termed a "yard" at a railway station, yet if the statute means to include such as a yard, the scope of the statute cannot be limited by the adoption of a rule restricting the definition of the term "yard." There is nothing in the statute indicating that the term "yards" was not intended to mean whatever are termed yards in ordinary parlance when ref-

erence is had to railroads.  On the contrary, there is enough in the statute to indicate that it intended said term should have the broad and general, rather than the limited, meaning.  Because, instead of saying "in yards where trains are made up," it says "in *all* yards, divisional and terminal stations, *and* where trains are made up."  That the term should have a broad rather than a limited meaning is also shown in the expressed purpose of the required blocking, which was "to prevent, as far as possible, the feet of employees or other persons from being caught therein."  This is also shown in the fact that the statute applies to the owners or operators of any railroad or *part* of railroad in the State.  That is, it is not conceiveable that a statute, the purpose of which is to prevent as far as possible the feet of employees being caught, should require blocking only where there was danger to the employees working constantly all day long and every day, and not require it where there was danger to employees wherever they usually, customarily and ordinarily, though not constantly, were expected to switch cars when the business of the road required them to be switched.

It will be observed that the place where deceased was killed was in a "yard" within the meaning of that term as ordinarily used. There was a switch about one hundred yards east of the depot and one about the same distance west of the depot.  These two switches marked the limits of the yard at that place.  There was a system of tracks there where cars could be cut out of a train and either stored on said tracks to be loaded or unloaded or turned over to the Wabash railroad to be transported on its line.  Over these tracks cars could be taken from the Wabash, and other cars standing in the yard at said depot could be placed in the train and carried away.  And over these tracks, in the language of defendant's definition of a yard, "movements

179 App. 19

not authorized by time table, or by train order, may be made subject to prescribed signals and regulations.'' All the above storing, taking away and transfer of cars required more or less switching as a usual and regular routine of business, though not requiring employees to be engaged thereat constantly all day and every day. In other words, switching was *customarily* or habitually, though not *constantly*, required there. And it was while deceased was engaged in cutting out a car and coupling his train together again in such a place, that he was killed. We cannot say the statute does not apply to such a place.

The next complaint is that the court erred in striking out the two special defenses. The house track leading from the depot to the main track at a point west of the depot had formerly turned in a short curve and joined the main track at a point much closer to the depot. This short curve was to avoid a pond. Prior to the accident this pond had been filled, and the house track extended further west before it joined the main track, causing the switch to be moved from where it had been to the point where deceased was killed. This portion of the house track laid over the site of the pond was a skeleton track, that is, the ties and rails were in proper place and also the switch so that it could be used, and was in use, but the ballast had not been filled in between the ties and possibly levelled and made smooth. The track and switch in question were put in, in August, 1907, and at that time the law was already in force requiring the switch to be blocked by September 1, 1907, it remained unblocked after September 1, 1907, in violation of the statute, down to November 7, 1907, when deceased was killed and was not blocked until in June, 1908. The statute contemplates that after September 1, 1907, a switch *in use* must be blocked. It does not contemplate that a switch can be erected and put in use, and that the railroad can, after putting it in use, have a reasonable time

in which to block. But that when a switch or frog is put in use it must be blocked at that time. The defendant did not dispute the fact that the switch was being used. Hence nothing could be accomplished by reversing and remanding the case on this point.

The other special defense stricken out was that of contributory negligence on the part of deceased. But, under the statute, contributory negligence constituted no defense. [Sec. 3164, R. S. 1909.] The judgment is affirmed All concur.

## ON REHEARING.

ELLISON, P. J.—This case has been again considered and we are satisfied with the foregoing opinion, delivered by Judge Trimble at the first hearing.

But a point, not before discussed, has been presented. It relates to the validity of the statute; defendant claiming it is void for uncertainty. Preliminary to considering that question we will dispose of plaintiff's claim that defendant should not be allowed to raise that objection in this court, since it was not made by answer, or otherwise, at the trial. Plaintiff has likened defendant's right to cases where the claim has been made that a construction of the constitution was involved. The rule, in the latter instance, being that the claim must be made at the first proper opportunity. [George v. Railroad, 249 Mo. 197, 199; and cases cited; Hutchinson v. Morris Bros., 190 Mo. 673, 677.] We think the instance of a constitutional question, relating, as it does, to the jurisdiction of the Supreme Court and Courts of Appeals is not analogous to the question of the invalidity of a statute for other grounds than its being unconstitutional. If a court has jurisdiction of a case, except for some matter which may or may not be involved, as the party concerned may elect, he must present that question at his first opportunity, else he concedes it is not in the case. But if there is no question of jurisdiction, the defendant

may attack the validity, or the construction of the law, on any ground not involving its constitutionality.

In this State, it has ever been the rule that the question whether a petition states facts sufficient to constitute a cause of action is not waived by failing to make objection by demurrer or answer; and it may be raised for the first time in the appellate court. [Chandler v. Railroad, 251 Mo. 592; Burns v. Patrick, 27 Mo. 434; Childs v. Railroad, 117 Mo. App. 414; State Ex Rel. v. Bland, 144 Mo. 534.] Now if the statute in controversy is void for uncertainty, or is void for impossibility of execution, then a petition based upon it does not state a cause of action, and hence advantage may be taken of such fatal defect, on appeal though not before mentioned.

The statute in dispute, section 3163, Revised Statutes 1909, is quoted in the forepart of Judge TRIMBLE's opinion and the question we have now to determine is whether it is valid. Defendant claims it is void for uncertainty. We take some exception to defendant's mode of stating its objection. Neither the words nor the meaning of the statute is uncertain. Indeed, we think the very certainty of its expression and meaning is the thing that gives defendant a basis for the contention that it is void. That is to say, it so clearly commands the performance of the acts specified that their performance is said to be an impossibility, and in consequence the law is void; and that is really the course of defendant's argument. The particular parts are these words; that the company shall use "the best known appliances or inventions to fill or block all switches . . . to prevent, as far as possible, the feet of employees being caught therein." Now there evidently is no uncertainty about the words and the meaning of the statute. It is undoubtedly true that "Where the statutory terms are of such uncertain meaning, or so confused, that the courts cannot discern

with reasonable certainty what is intended, they will pronounce the enactment void." [State v. Light Co., 212 Mo. 101, 110.] But that is not the condition in this case. We have not here a lot of words thrown together in such a way as not to be intelligible. Nor is it a direction in intelligible language of a number of incongruous, inconsistent and self contradictory matters, as was the statute discussed and held void by the Supreme Court in an able opinion by Judge WILLIAMS, in State ex inf. v. Street Ry. Co., 146 Mo. 155.

But though the words in question are intelligible, the question remains, is it impossible in any reasonable practical application, to comply with it. For, if a statute is such that it is "impossible to comply with its provisions it will be held to be of no force and effect." [People v. Briggs, 193 N. Y. 457, 459; State v. Partlow, 91 N. Car. 550.] So the objection to this statute is that it is not possible for railway companies to comply with it. Defendant asks: "What is the best known appliance or invention for this purpose? How is it to be ascertained? Who is to decide it? It is perfectly clear that the statute is too uncertain to be enforced. What one court or one jury might decide to be the best known appliance or invention another court or jury might decide not to be the best known appliance or invention. It is utterly impossible for anyone from time to time, or at any time, to ascertain what is the best known appliance or invention. One court or jury might hold a railroad company liable for not blocking its frogs with a certain appliance, and another court or jury might hold the same or another railroad company liable for using the self same appliance." Our answer to this is, that the Legislature realized it was dealing with and directing human agencies, not infallible, and when it demanded the use of the best appliances it meant the best according to the careful judgment of men qualified to judge of such instrumentalities. The best known does not necessar-

ily mean that there shall be but *one* kind, or that that particular one shall be selected at the peril of the company; as there may be several of equal safety, the use of either of which would satisfy the terms of the statute. There might be several safety appliances or devices and one or more be known at a certain time as the best, as compared with the others, and yet it might be, as was said in argument, that some of the latter may, by experience and use, come to be known and considered before trial of a given case, as the best. But we do not think such considerations should prevent a practical application of the statute. Culpability of a railway company would be judged by the status of things existing at the happening of an injury. The best appliances; the best methods; the latest improvements; the best to be had in the market, are closely related expressions in common use, and their practical fulfillment in ordinary contracts of the day, has never been thought to be unreasonably difficult, much less impossible. Character of safety appliances in different conditions have been the subject of frequent discussion, and the use of terms similar to those in this statute have not been thought inapt. Thus in 4 Elliott on Railroads, Sec. 1472, "the expression is quoted from Stienwig v. Erie Ry. Co., 43 N.Y. 123, that the *most approved* modes of construction and machinery in *known* use in the business and the *best precautions in known practical use* for securing safety," was the care required in case of spark arresters; and in that case it will be seen the difficulties suggested by defendant of application of the present statute were not considered as affecting the rule stated. The same author (Vol. 3, sec. 1224) speaks of "*approved* appliances in general use." So 1 Shearman & Redfield on Negligence, Sec. 45, speaks of the law as requiring all "known tests," as to the safety of cars. In Fitch v. Railroad, 45 Mo. l. c. 327, the Supreme Court refers to the duty of a railroad

to show "that the best machinery and contrivances were used."

It is important to look to the former state of the law. [Decker v. Diemer, 229 Mo. l. c. 324.] Undoubtedly the statute was enacted to require stricter diligence and better effort to effectuate the safety of employees  The rule had been as it is stated in 1 Whites Personal Injuries on Railroads, Sec. 253, that "it was not incumbent upon the employer to adopt every new invention useful in the business, which might serve to lessen the danger," and that he was "not bound to furnish either the newest, safest, or best appliances." And so our Supreme Court had stated it. [Huhn v. Railroad, 92 Mo. 440; Smith v. Fordyce, 190 Mo. l. c. 24.] This rule of mere ordinary care to select appliances reasonably safe, in the instance of switch blocks, has been changed.

But it is said the Legislature should have laid down some rule or mode, whereby the "best known appliances" might be found and selected. It is more than probable that if such task had been assumed, the force and effect of the law would have been lessened, or its "uncertainty" have been increased.

It makes nothing against the statute that different juries will not agree on the fact of what is, or which is, "the best known appliance." Different juries doubtless will do as suggested. It is the misfortune of our system which is to be laid to the imperfection of human nature. Juries make a different application of the same state of facts under our law in cases of the highest importance, yet this uncertainty of uniform result has never been assigned as ground for nullifying the law.

The point made that the motion in arrest should have been sustained because the petition did not contain the names of the beneficiaries and facts from which the measure of damages could be ascertained was not mentioned at the trial, nor in the motion in arrest. Johnson v. Mining Co., 171 Mo. App. 134, is not appli-

cable since there the point was made by demurrer. Under the Federal Liability Act it is held that the beneficiaries should be ascertained and the verdict should apportion the damages; but if that is not done and no exception taken on that account, it is waived and a verdict in a lump sum will be sustained; Hardwick v. Railroad, (not yet reported). We think the judgment should be affirmed. All concur.