Rockingham,
March 2, 1937.

MABEL JOHNSON SMITH, *Adm'x*

*v.*

BOSTON & MAINE RAILROAD.

FLORENCE A. SMITH *v.* SAME.

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for Mabel Johnson Smith, Adm'x.

*William H. Sleeper* (by brief and orally), for Florence A. Smith.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

Woodbury, J. The defendant contends that the evidence adduced at this trial differs from that before the court at the previous transfer in that it now definitely appears that the tracks between Rockingham Junction and Newfields had been rock ballasted a few months prior to the accident, and that thereafter, due to the difficulty in walking upon such ballast, the right of way had not been used by pedestrians generally but only by casual trespassers. As a consequence of this evidence the defendant argues that it was under no obligation to anticipate trespassers upon its right of way during the evening of January 6, 1928, and, since the plaintiff and the decedent were not seen in time for saving action, that there can be no liability because no duty of care was owing to them.

This argument fails because the evidence upon which it is based is not in substitution for any considered by this court before, but is only in addition to that previously considered, and it does not require exclusive acceptance. Should it be believed by the jury it would provide a sufficient basis for verdicts for the defendant, but belief

is not compelled. There is evidence in this record, as there was in the former one, to the effect that the defendant's right of way at the scene of the accident was generally used by pedestrians during the day time and early evening up to, and even after, the date upon which the plaintiffs' injuries were received. This evidence, if believed, is sufficient to charge the defendant with a duty of care. *Smith* v. *Railroad, supra.*

The defendant offers the further argument that at this trial it became the "law of the case that the defendant is not chargeable with the knowledge of the use made by pedestrians of the track in this locality" unless the defendant's servants who had acquired such knowledge were under the duty to communicate the same to the defendant. This argument does not require consideration. The case was not submitted to the jury upon this narrow ground alone. Actual knowledge of the general use made by pedestrians of the right of way was but one ground upon which the jury were permitted to predicate the existence of a duty to use due care. They were also permitted to find such a duty if the defendant "had reasonable cause to apprehend that persons might be using the tracks at the time when this accident occurred." In other words, they were allowed to predicate the duty upon either the actual knowledge of the defendant or upon a general use so notorious "that the defendant, if in the exercise of average prudence, would have known of it and would have anticipated the presence of the plaintiffs." *Smith* v. *Railroad, supra,* 256. Submission upon either of these grounds was warranted by the evidence. The situation at this transfer does not differ from that presented at the previous one.

Aside from the foregoing, the evidence now before us is substantially similar to that introduced at the former trial and, under the principles laid down in the previous opinion, which are not open to reëxamination here, (*Small* v. *Railroad,* 87 N. H. 25), the defendant's motions for nonsuits and directed verdicts were properly denied.

During the course of the trial the plaintiffs put in evidence various rules of the defendant governing the duties of its employees with respect to the operation of its trains. The court below found as a fact that none of these rules were applicable to the train movements undertaken at the time of the accident and withdrew them from the consideration of the jury. With respect to one rule, however, (number 103 which reads as follows: "When cars are pushed by an engine, except when shifting or making up trains in yards, a trainman must take a conspicuous position on the front of the leading car"), he

charged the jury "that the rule itself did not apply to the situation at the time of the accident, and may be considered by you only as evidence of a precaution that the ordinary man of average prudence would take, and as evidence that the defendant had knowledge of a suitable kind of protection." He also charged that "The failure of the defendant to promulgate and have in effect a rule applicable to the situation that existed on the night of the accident, . . . is no evidence of negligence on the part of the defendant."

These instructions are inconsistent. The absence of a rule is said to be no evidence of negligence, after saying that the rule might be evidence of the requirement of due care. The rule was a special one, not applicable to shifting or making up trains in yards, and was only for observance in running a train backwards. To require the defendant, by reason of its adoption of the rule for a special situation, to employ it in a situation entirely different in its features from that for which the rule was established, would be a demand beyond the requirements of due care. It follows that none of the rules were admissible in evidence for any purpose.

The defendant also excepted to the charge "in so far as it instructed the jury that the defendant was obliged to anticipate the presence of possible rather than probable pedestrians." The record does not indicate that the court did so instruct the jury. In fact, they were frequently told that no duty of care on the part of the defendant was owing to the plaintiff and the decedent unless it "knew or had reasonable cause to apprehend" the presence of trespassers upon its right of way. This was a correct statement of the law in respect to duty. *Smith* v. *Railroad, supra,* 246, 252, and cases cited. What the court did charge was that, should the duty of care be found to exist, the "defendant was required to exercise reasonable care to avoid injury to people who might be in the locality in question as pedestrians upon the tracks." And again that negligence on the part of the defendant could be found if it initiated its train movements on the night of the accident "without taking precautions for the safety of those who might be on the tracks." If the jury considered this language apart from its context they may have concluded that they were permitted to find negligence on the part of the defendant, that is, failure to fulfil its duty of care, if there was a possibility of harm resulting to trespassers by reason of the train movements undertaken on the night in question. Such is not the law.

The bare possibility of harm is not enough to call for saving action. Before such action is called for there must be some probability that

without it injury will result. It does not follow from this, however, that the balance of probabilities is in any way involved. "Danger consists in the risk of harm as well as the likelihood of it, and a danger calling for anticipation need not be of more probable occurrence than less. If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care. . . . The test is not of the balance of probabilities, but of the existence of some probability of sufficient moment to induce action to avoid it on the part of a reasonable mind." *Tullgren* v. *Company*, 82 N. H. 268, 276, 277. At the next trial language should be used which will preclude the possibility of such an erroneous understanding.

The defendant seasonably requested instructions to the effect that if the jury should find that rock ballast was installed between Newfields and Rockingham Junction prior to the date of the accident, and that thereafter general use by pedestrians of the defendant's right of way between those points decreased or ceased, then the duty on the part of the defendant to anticipate the presence of trespassers would be correspondingly decreased or suspended. These requests were not given. All that was said on this point in the charge was that before a duty of care arose "it must appear that the use made of the way was and had been such for a sufficient length of time previous to and up to the date in question as to charge the railroad with knowledge of that fact."

The defendant's requests are supported by the evidence referred to at the beginning of this opinion, and embody an accurate statement of the law. Just as the duty to anticipate trespassers arises only when trespassers become known or notorious, so also the duty of anticipation is commensurate with the amount of trespassing, and so likewise does the duty cease when general or known trespassing ceases. The charge as given does not, in our opinion, sufficiently inform the jury of the effect of the defendant's testimony as to the lessening or cessation of trespassing after the rock ballast was installed. The defendant was entitled to have the legal effect of this evidence explained to the jury.

Detailed consideration of the rest of the defendant's exceptions to the charge is not required. To do so would be to expand this opinion to an unwarranted extent and would serve no useful purpose. Many of its exceptions were given careful consideration in the previous

opinion in this case. Others do not require consideration because the requests upon which they were based were given, in substance if not in form, and to this the defendant cannot be heard to object. *Richards* v. *Richards*, 86 N. H. 273, 276, and cases cited. Still other requests were either based upon part only of the material evidence or else gave undue prominence to portions of the evidence to the exclusion of other portions equally material. It is not error to refuse to grant such requests. *Minot* v. *Railroad*, 74 N. H. 230; *Jones* v. *Stone*, 78 N. H. 504. It suffices to say that a careful study of the record fails to disclose any other reversible errors in the charge.

The defendant objected and excepted to the admission in evidence of the testimony of the defendant's telegrapher stationed at Rockingham Junction to the effect that it was unusual for the east bound freight to come into the station in two sections. This evidence was objected to on the ground of its immateriality because there was no evidence that the plaintiffs had any knowledge of the usual situation, and, without such knowledge, could not have been misled by an unusual one. The evidence was admitted for its bearing "on the conduct of the defendant." The admissibility of this evidence for the purpose for which it was admitted seems clear. The defendant had the undoubted right to use its tracks for any train movement it might wish to make, but unusual train movements, undertaken when the presence of trespassers should be anticipated, may well call for greater precautions than ordinary ones. The defendant's claim of prejudice because the evidence may have been used for an improper purpose, that is, as indicating that the defendant was negligent in initiating the movement at all, is refuted by the charge. The court specifically informed the jury that "The defendant had the right to use its track for any train movement which it saw fit to make, and the fact that the movement resulting in injury to the plaintiffs may or may not have been previously made to their knowledge is no evidence of negligence on the part of the defendant."

Five other exceptions raise the question of the competency of various witnesses, either as experts or as observers, to testify as they did. These are all without merit. In the case of those witnesses who gave their opinions it is sufficient to say that they were all persons who could be found to have expert knowledge concerning the matters about which they testified. As to the others it appears in each case that the witness was in a position to have personal knowledge concerning the subject-matter of his testimony.

If there was error in the admission of testimony concerning the

space within which train number 80 could be stopped, it was cured by the charge in which the jury were instructed as a matter of law that the crew of that train "did all that they were required to do under the circumstances to have avoided the injury to the plaintiffs."

Five other exceptions to the introduction of evidence were all considered at the previous transfer and will not be again discussed.

The same situation is presented with respect to the defendant's exceptions to the refusal of the court to withdraw issues from the jury.

Of the nine exceptions of the defendant to the arguments for the plaintiffs but one requires consideration here. Counsel for the plaintiff, Florence A. Smith, urged the jury to assess damages with feelings "of humanity and sympathy," for her mental and physical suffering. Such an open attempt to seduce the jury from its duty cannot be allowed to go unnoticed by this court. That counsel's subsequent attempt to withdraw the remark was futile to eradicate the prejudice which he must have intended to excite when he made it. Should a similar attempt be again made there would be but one course open to the presiding justice and that would be to declare a mistrial.

*New trial.*

All concurred.

---

On Motion for Rehearing. After the foregoing opinion was filed the plaintiffs moved for a rehearing.

*Robert W. Upton* and *William H. Sleeper*, by brief, for the motion.

*Hughes & Burns*, opposed.

Woodbury, J. In support of their motion the plaintiffs contend that in the two transfers of the instant case this court has taken inconsistent positions in respect to the application of rule 103.

At the first transfer, reported in 87 N. H. 246, there was an agreement to the effect that "the place of accident was not a yard," and "there was evidence upon which ... [the rule's] application to similar situations could be found." Under these circumstances we held, citing *Derosier* v. *Company*, 81 N. H. 451, that "The question of application was for the jury. If applicable to the place, the rule

was an admission of duty. If not applicable to the particular place, the rule and custom might yet, because offered generally, be regarded as 'evidence of a kind of protection which might be found to be suitable if protection . . . were found to be a duty of the defendant'."

At the second transfer the situation was radically different. There was then no agreement that the place of accident was not a yard and there was no evidence that the rule had ever been applied to "similar situations." Under these circumstances the court below charged the jury to the effect "that the rule itself did not apply to the situation at the time of the accident," but that they might consider it "as evidence of a precaution that the ordinary man of average prudence would take, and as evidence that the defendant had knowledge of a suitable kind of protection." In holding the above quoted parts of the charge erroneous in that the rule should not have been considered by the jury for any purpose, we said: "The rule was a special one not applicable to shifting or making up trains in yards, and was only for observance in running a train backwards." In other words, we held that the rule did not apply either to the particular situation which existed on the night of the accident or to any situation similar to it in its material features.

Two questions must be considered before it can be determined what use, if any, may be made of the rule in the case at bar. The meaning of its terms, its construction, must first be considered, and then the question arises as to whether or not it applied to the train movements which were being carried out on the night of the accident. If it applied to the precise situation then presented the jury might consider it as an admission of a duty owed to these plaintiffs. If it did not apply to that precise situation but did apply to a substantially similar one, then it might be considered by the jury "as evidence of a kind of protection which might be found to be suitable." On the other hand, if it applied only to some radically different railroad movement, then it should not have been considered by the jury for any purpose.

Whatever may be the application of the rule to shifting operations outside of yards, it is perfectly clear that it does not apply when "shifting or making up trains in yards." There is no room for any other construction of its terms. It is equally clear from the records of both trials that the movements of the freight train on the night of the accident, constituted a shifting or switching operation. The question remaining is whether or not these operations took place in a yard.

As pointed out above, at the first transfer of this case there was an agreement to the effect that "the place of accident was not a yard," while at the second transfer no such agreement was made. At this transfer, then, we must determine whether or not the freight train was being shifted either in a yard, or in a place similar to a yard, when the accident occurred.

The present record clearly establishes that the railroad had never designated any portions of its property in the vicinity of Rockingham Junction as a "yard," in the strict or limited sense of that term, but it also appears that its tracks at that place were used for the storage of cars when not in use and for the switching operations essential to the making up and breaking up of trains. It also appears that one of the defendant's employees considered that its tracks at that point constituted a "yard."

The term "yard," in the construction of statutes, even in the construction of penal ones, is considered not as limited only to places so designated by the railroad, but is interpreted to include places "upon which are railroad tracks, used for the purpose of receiving and storing cars when not in use, or used for the purpose of switching, in the distribution of cars and engines to other places, and in the making up of trains." *Chicago & Northwestern Ry. Co.* v. *Chicago*, 151 Ill. 348, 357; *George* v. *Railroad*, 179 Mo. App. 283; *Baltimore and Ohio &c. Ry. Co.* v. *Little*, 149 Ind. 167, 172, 173; *Harley* v. *Railroad*, 57 Fed. 144; 51 C. J. 372.

It follows from the foregoing that the accident happened in a place which had all the essential features of a "yard" and which must, therefore, be held to come within the exception to the rule. In consequence the rule, by its terms, had no application to the situation. The language of the rule is equivalent to an express declaration that the safeguard therein specified is not required in such places. In spite of this declaration, the instruction of the court permitted the jury to use this rule as the basis of a finding that the safeguard in question was "a precaution that the man of average prudence would take" in the situation above described. We think that the rule furnished no logical basis for such a finding. If any language inconsistent with this conclusion was used by the court upon the former transfer of this case, it must be limited accordingly.

In further support of their motion the plaintiffs contend that the argument made by counsel for the plaintiff Florence A. Smith in which he urged the jury to assess her damages with feelings of "humanity and sympathy" was not really prejudicial, and that, even

though it were, still it could affect no more than the issue of damages in her case. These contentions are unsound.

The cases, although technically separate actions, were tried together. Identical issues of fact were involved, the same charges of negligence were made by each plaintiff and in each case the defendant made the same defence. In almost every instance the testimony of the witnesses, except such as related to damages, bore upon each case in almost equal degree and the plaintiffs were repeatedly referred to collectively in the charge. From these similarities the jury must have understood that the cases were practically identical. Under these circumstances it could not be found that an argument made in one case for the assessment of damages with feelings of "humanity and sympathy" would not affect the jury in its consideration of the other. Each plaintiff took the chance of misconduct on the part of the other amounting to cause for a mistrial.

That the argument amounted to cause for a mistrial is not open to doubt. Its highly inflammatory and prejudicial nature is too patent to call for demonstration.

Offending counsel's withdrawal of the argument presented an issue of fact for the Presiding Justice as to whether or not the prejudice thereby engendered was cured (*Olena* v. *Company*, 82 N. H. 408, 414, 415), and this issue has not been passed upon. We see no reason for remanding the cases for a finding on this issue, however, because the record does not disclose any circumstances from which a finding of cure could properly be made. *Bruce* v. *Company*, 87 N. H. 462, 464.

The verdicts must, therefore, be set aside, and set aside not only on the issue of damages but also on the issue of liability. The argument, although directed only to the issue of damages, was so potent to excite compassion and prejudice that it could not be found to have poisoned the minds of the jury on that issue alone.

The other contentions advanced by the plaintiffs in support of this motion were fully considered in the original opinion and do not call for further discussion.

*Former result affirmed.*

The others concurred. PAGE, J., concurred in the result for the following reasons: I agree with the result on the ground that the situation now presented differs from that existing at the time of the first transfer. At the last trial, evidence was lacking of custom to

exercise the precautions prescribed by rule 103 in places and under circumstances similar to those presented here. The instruction excepted to by the defendant was therefore erroneous. To the ruling of the presiding justice that the rule itself was not applicable at the place and time of the accident no exception appears to have been taken, so there seems to be no present occasion to declare the application of the rule.