KANSAS CITY SOUTHERN RAILWAY COMPANY *v*. STATE.

4518                                                    214 S. W. 2d 79

Opinion delivered October 11, 1948.

Rehearing denied November 8, 1948.

*Hardin, Barton & Shaw,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

WINE, J.    Appellant brings this appeal from a judgment of conviction in the Sebastian County Circuit Court, imposing a fine of $50 for a violation of the ''Full Switching Crew Law'' of Arkansas, Act No. 67 of the Acts of 1913, which Act now appears as §§ 11161, 11162, 11163 and 11164 of Pope's Digest of the Statutes of Arkansas.

Counsel for appellant, and the Prosecuting Attorney who issued the information, entered into a stipulation of facts reading as follows:

"Stipulation

"It is stipulated and agreed by the parties hereto that:

"I. The defendant, The Kansas City Southern Railway Company, is a Missouri corporation engaged in the business of a common carrier in the State of Arkansas and other states;

"II. It is a railroad company, or corporation, operating a railroad not less than one hundred miles in length;

"III. In the operation of its railroad the defendant conducts a branch operation between Poteau, Oklahoma, and Fort Smith, Arkansas, a distance of 28.9 miles, over tracks belonging to the Frisco Railway Company under a trackage agreement with the Frisco. This operation is exclusively car-lot operation, involving no less-car-lot shipments, no passenger trains, no mail, no passengers and no main line regular or extra freight trains on the leased track. The defendant operates between these points, on the leased track, one freight train each way daily except Sunday. Trains consisting of less than 25 cars are operated over the entire route from Poteau to Fort Smith by a crew of the defendant's employees consisting of an engineer, a fireman, a conductor and two brakemen. Such trains are operated between Poteau and Heavener, Oklahoma, with a crew of the defendant's employees consisting of an engineer, a fireman, a conductor and two brakemen, and between Heavener, Oklahoma, and Fort Smith, Arkansas, with a crew of the defendant's employees consisting of an engineer, a fireman, a conductor and two brakemen. Said crews operate such trains into Fort Smith, and there engage in spotting cars. "Spotting" involves switching, pushing or transferring of cars across public crossings within the city limits of the said city of Fort Smith. When the basic work day expires a second (or relief) crew, consisting of the same number of employees, completes any spotting (switching, as aforesaid) and operates a newly made up train back to Poteau, Oklahoma, with the same engine and caboose as was used by the crew on the operation

into Fort Smith. A basic (or nominal) work day for the defendant's employees herein referred to in this type of service is eight hours. The spotting (switching, as aforesaid) operations in Fort Smith occur on tracks and property belonging to both the defendant and the above referred to Frisco; shown on Exhibit B.

"IV. The City of Fort Smith, Arkansas, is a city of the first class;

"V. It is agreed that on October 28, 1947, the crew of the defendant; that is, one engineer, a fireman, a conductor and two brakemen, did engage in spotting cars as defined in Paragraph III above in the City of Fort Smith, Arkansas.

"VI. Exhibit B, attached to this stipulation and made a part hereof, shows the correct location of the defendant's Kansas City Southern Company, main line railroad, and the branch line operation over tracks leased from the Frisco between Poteau, Oklahoma, and Fort Smith, Arkansas.

"VII. It is agreed by the parties that Exhibit A shall be attached to this stipulation and become a part of this stipulation, said exhibit having been copied from records kept by the company, as to the revenues received and expenditures connected with this branch operation. Said revenues and expenditures of this branch operating being kept separate and apart from the revenues and expenditures of the other operations.

"VIII. The Kansas City Southern Railway Company agrees to immediately comply with the Full Crew law if the courts adjudge the operation of this branch to be a violation of same.

"Executed at Fort Smith, Arkansas, this 19 day of January, 1948."

The case was submitted to the trial court sitting as a jury upon the agreed stipulation and exhibits thereto without oral testimony.

Arkansas has three so-called "Full Crew Laws," being Act No. 116 of 1907 (§§ 11155, 11156 and 11157,

Pope's Digest) ; Act No. 298 of 1909 (§§ 11158, 11159 and 11160, Pope's Digest), and Act No. 67 of 1913 (§§ 11161, 11162, 11163 and 11164, Pope's Digest), the last named Act being the "Full Switching Crew Law," not to be confused with the two former Acts herein mentioned, and being the only Act applicable in this case.

The *only* question for determination here is whether the Fort Smith branch of the appellant's railway system is a railroad less than 100 miles in length such as would exclude it from the provisions of Act No. 67 of 1913 (§ 11163, Pope's Digest). In approaching this question, we first point to paragraph II of the stipulation which, of course, refers to appellant's entire system.

Appellant seeks refuge in the case of *Chicago, R. I. & P. Ry. Co.* v. *The State,* 86 Ark. 412, 111 S. W. 456, but it must be noted that case was primarily an attack upon constitutionality of Act No. 116 of 1907, it being asserted that the provisions of that Act requiring railroad companies to equip certain freight trains with at least three brakemen, imposed an undue burden on interstate commerce, and hence was in conflict with Acts of Congress on that subject. While this Court upheld the Act, as did the Supreme Court of the United States in affirming the judgment of this Court, 219 U. S. 453, 31 S. Ct. 275, 55 L. Ed. 290, neither of the two above mentioned questions decided in that case is presented here, and reference to the factors and considerations to be used in determining whether a railroad is a short independent line or a part of the over-all system of a trunk line. We agree that ownership alone is not the true or only test, but rather the issue is whether "the railroad companies operate (the line) as a part of their systems."

We do not think it important or controlling to a determination of this case that the employees (train crews) and equipment (engine and caboose) used on the Fort Smith branch of appellant's railroad were restricted to branch line service, as contended in appellant's brief, (though not included in the stipulation) for it is not even suggested in appellant's brief that such employees do not have service and seniority rights over the entire sys-

tem, or that they are not paid on the same basis and with the same type vouchers drawn on the general treasury of the company, as are all other employees of appellant. Likewise, it is not shown that either the employees or equipment used is peculiar to that particular branch, or that such equipment carries different markings, and could not or would not be freely used on any other part of appellant's system, where adaptable; nor do we think it important that "revenues and expenditures of said branch line operations are kept in books and records separate and apart from the main line operation." This does not appear to be unusual in railroad accounting. It is not suggested by appellant that the revenues from this branch are withheld from the general treasury of the company, or that they are not expended as are other available revenues.

This leaves only the question of appellant "operating between Poteau, Oklahoma, and Fort Smith, Arkansas, a distance of 28.9 miles, over tracks belonging to the Frisco Railway Company under a trackage agreement with the Frisco." Can it be seriously urged that this arrangement or practice is unusual in the annals of railroad operation? We think not.

Appellant's position in this case is little, if any, more tenable than were its contentions in the case of *Kansas City Southern Railway Company* v. *The State,* 116 Ark. 455, 174 S. W. 223, wherein it urged that "its line in said county (Benton), starting at Sulphur Springs enters the State of Oklahoma at a distance of 28.8 miles, the exact mileage between the Missouri line and the Oklahoma line being 28.83 miles and denying that the train was operated unlawfully or in violation of the 'Three Brakemen Act,' Act No. 116, 1907, alleging that the same was not applicable to such train or the operation of its road in that county." This Court upheld the Benton Circuit Court in its judgment of conviction.

Finally, it is noted that this appellant was tried and convicted on a similar charge of a like offense in the same court of the same county, November 20, 1935, and we affirmed in an opinion written by the late Justice

BUTLER, *The Kansas City Southern Railway Company* v. *The State,* 194 Ark. 80, 106 S. W. 2d 163. The legislative Act with which we are here concerned (Act 67 of 1913) was upheld by this court in an opinion written by Chief Justice McCULLOCH, *St. Louis I. M. & S. Railway Company* v. *The State,* 114 Ark. 486, 170 S. W. 580, later affirmed by the Supreme Court of the United States, 240 U. S. 518, 36 S. Ct. 443, 60 L. Ed. 776.

There being no error in the record, the judgment is affirmed. It is so ordered.

HOLT, J., dissenting. I respectfully dissent from the majority opinion. The facts are undisputed. A fair and concise summation by appellant is: ''The Kansas City Southern Railway Company (Defendant-Appellant) is a common carrier for hire. It operates a main line railroad through the states of Missouri, Kansas, Arkansas, Oklahoma, Louisiana and Texas, from Kansas City, Missouri, to Port Arthur, Texas. Said main line railroad does not serve Fort Smith. It runs through Oklahoma several miles west of Fort Smith. Appellant operates a branch line railroad from Poteau, Oklahoma, to Fort Smith, over 28.74 miles of track owned by the St. Louis & San Francisco Railway Company (Frisco).

''Inside the city limits of Fort Smith, appellant owns two miles of track, and it has trackage rights over 1.02 miles of Frisco tracks. For several years appellant has utilized said leased trackage from Poteau to Fort Smith for a branch operation. It transports thereover only carload shipments of freight. There is no mail, passenger or express service on said branch line.

''It operates one freight train of less than 25 cars each day. No main line equipment is used in the Fort Smith branch operation. Crews consist of an engineer, a fireman, a conductor and two brakemen. They work exclusively on the Fort Smith branch line operation.

''Carlot shipments are brought into Fort Smith over the branch line by one crew; and cars are spotted within the city limits. A second crew takes a newly made up train at Fort Smith back to appellant's main line at

Poteau, Oklahoma. Spotting and switching cars within the Fort Smith city limits is confined to the 3.02 miles of track owned by appellant and the Frisco railroad, which said tracks are separated from appellant's main line by the 28.74 miles of Frisco tracks.

"The Fort Smith branch is operated by appellant as a separate unit from its main line. Seperate books are kept on said operation, and as stated, cars are switched exclusively on said branch line."

Appellant was convicted under the provisions of §§ 11161-11164, Pope's Digest, (Act 67 of the 1913 Legislature), for failing to provide the full number in its switching crew as allegedly required by this act. This statute is highly penal and must be strictly construed. It admits that only five men constituted the crew here involved, but earnestly argues that the spur or branch line track in question was less than 100 miles in length and was not used as a continuous line with the main line, and therefore the provisions of the act, *supra,* did not apply to it. This, I think, on the facts presented becomes the decisive question in this case. Section 11163 provides: "The provisions of this Act . . . shall not apply to railroad companies or corporations operating railroads less than 100 miles in length."

As I read the facts, this short branch line, or spur, is less than 100 miles in length, in fact is 28.74 miles, and in my opinion, the principles of law announced in *C. R. I. & P. Ry. Co.* v. *State,* 86 Ark. 412, 111 S. W. 456, apply with equal force here, and are controlling.

In the instant case, it appears undisputed that appellant maintains this branch line as a separate operation from its main line operation. It operates exclusively in carlot shipments. No passenger trains are operated on this leased track and no mail or passengers carried. No main line regular, or extra freight trains, are operated on this track. Appellant operates on this leased track one freight train each way daily except Sunday. All trains consist of less than 25 cars and a crew of one engineer, one fireman, one conductor and two brakemen.

All freight thus hauled over this branch line is delivered by the main line in the same manner as any connecting carrier would handle it. Admittedly this branch line, or spur, is owned, for all purposes here, by appellant. Ownership, however, as pointed out in the Rock Island case, *supra,* is not the sole test. It was there said:

"That there is a marked difference in the management, control and operation of long and short line railroads is a matter .of common knowledge, known to all observers. Great trunk lines have been constructed through the country that are highways of interstate and international commerce. Both freight and passenger trains pass back and forth upon them every few minutes, and great speed is attained in their movement. On the other hand are found many short lines which supply the needs of small communities, and upon such lines there are but few trains, and those of light weight and of few coaches and cars in comparison with the magnificent passenger and tremendous freight trains moved upon the large trunk lines. Bringing the comparison more nearly home, there are found in this State important through lines, upon which are moved many passenger and freight trains daily; and there are also found many short lines of railroad, some owned and operated by independent companies and some operated as branches and feeders to the larger companies by whom they are owned or controlled. Upon these small roads the necessity of protecting trains from collision from either end is materially less than upon the great lines where the trains are more numerous, heavier and accustomed to greater speed. The movement of a train is necessarily less fraught with danger where there is no other train upon the line, or but few, than upon a line where trains are moving every few minutes, or every few hours. Short lines are usually lightly constructed, and carry light rolling stock in comparison to the great systems. These and other matters of common observation of the difference between long and short lines of railroad can afford reasons why the Legislature should leave untouched the short lines of

railroads with legislation designed to promote safety in operation of long freight trains. . . .

"It may be argued that the Legislature intended to treat these short lines and branches of the larger lines as part of the large systems. If the railroad companies operate them as part of their systems, certainly they are within the act, and the similarity with the short independent lines does not then exist. If the railroad companies operate them separately as independent lines are operated, then there can be no just reason in principle for a distinction between them and the separate lines. Such distinction would then be based solely upon ownership. This legislation can only be supported on account of its supposed promotion of the safety of the public and the employees of a public service corporation, and a distinction based on ownership is wholly untenable.

"The proper construction to place on the act, and that renders it valid, is: If the short line is in fact used as a continuous line with the main line, or in any other way as a part of it, and not as a separate line merely connecting with it, then it is a part of the line. But if it is a mere connecting line, separately operated—operated as an independent short line is operated—although owned by the company owning the larger line, then it would not be within the statute."

I think it is established, in the instant case, that this short branch line was a connecting line and operated separately from the main line operations though owned by the main line and was not within the statute. All switching operations were totally disconnected from appellant's main line by 28.74 miles of Frisco tracks. Appellant's income from said branch line is separately kept from the main line operations and the switching crew paid from the branch line income. The case of *The Kansas City Southern Ry. Co.* v. *State,* 194 Ark. 80, 106 S. W. 2d 163, referred to in the majority opinion is, I think, clearly distinguishable for the reason that the issue presented here was not raised in that case.

The judgment should be reversed and the cause dismissed.

Mr. Justice FRANK G. SMITH concurs in this dissent.