St. Louis-San Francisco Railway Co. *v.* State.

4567                               223 S. W. 2d 186

Opinion delivered October 3, 1949.

*E. G. Nahler* and *Westbrooke & Westbrooke,* for appellant.

*Bailey & Warren, Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellant was convicted of a violation of the Full Switching Crew Law of Arkansas,[1] in that the appellant's switching crew in the City of Osceola consisted of an engineer, fireman, conductor and only *two* brakemen, whereas the State contends that *three* brakemen are required by the said law, the germane portions of which read:

"No railroad company or corporation owning or operating any yards or terminals in the cities within this State, where switching, pushing or transferring of cars are made across public crossings within the city limits of the cities shall operate their switch crew or crews with less than one engineer, a fireman, a foreman and *three* helpers. It being the purpose of this Act to require all railroad companies or corporations who operate any yards or terminals within this state who do switching, pushing or transferring of cars across public crossings within the city limits of the cities to operate

---

[1] This is Act 67 of 1913, and is now contained in §§ 73-726, *et seq.,* of Ark. Stats. of 1947. The recent case of Kans. City So. Ry. Co. v. State, 213 Ark. 906, 214 S. W. 2d 79 involved the same law; and in the opinion in that case the earlier cases were listed and discussed.

said switch crew or crews with not less than one engineer, a fireman, a foreman and three helpers, . . .'' (italics our own).

It is conceded that the only question is whether the railroad switch tracks in the City of Osceola constitute a railroad ''yard'', as that word appears in the said law. In claiming that the trial court erroneously decided this fact question, appellant says:

''The appellee contends that the appellant owns 'yards' in the City of Osceola. Because of its interpretation of the word 'yard' in the statute it charges the appellant has violated the statute in switching, pushing or transferring cars across public crossings in Osceola using only two helpers instead of three helpers in addition to an engineer, a fireman and a foreman. The appellant denies that it is violating the statute because Osceola is not a 'yard' or 'terminal' as those terms are understood in railroad parlance. The burden is on the State to prove its charge and the evidence is in conflict.''

We agree with appellant that the evidence in this case is in conflict; but we hold that there is sufficient evidence to sustain the finding against appellant. The record discloses that the appellant has facilities in Osceola consisting of seventeen spur, team and house tracks totalling more than three miles in length; that these tracks serve eleven industries and are across four streets; that appellant maintains a switch engine and crew at Osceola for the purpose of doing switching in that city and also in Wilson, a community several miles away; that the Osceola switch engine takes cars from arriving trains to the various industries and then collects the cars containing outgoing freight, and returns them to the proper tracks for the departing trains; and that this switching and collecting of cars is done on no authorized time table, but as prescribed by signals, rules and instructions from time to time.

The evidence as thus synopsized, together with other evidence in the record, is sufficient to support the holding that appellant's facilities in Osceola constitute a

"yard", whether tested by (1) the dictionary definition, (2) that contained in the cases, or (3) the railroad's own definition as contained in some of its "rules." Webster's New International Dictionary defines a railroad yard as: "a system of tracks within prescribed limits used for making up trains, storing cars, etc., . . ." In Smith v. Boston & M. R. Co., 88 N. H. 430, 191 Atl. 833, there was presented the question of what constituted a railroad yard, and this language appears in that case:

"The term 'yard', in the construction of statutes, even in the construction of penal ones, is considered not as limited only to places so designated by the railroad, but is interpreted to include places 'upon which are railroad tracks, used for the purpose of receiving and storing cars when not in use, or used for the purpose of switching in the distribution of cars and engines to other places and in the making up of trains.' Chicago & Northwestern Railway Co. v. Chicago, 151 Ill. 348, 357, 37 N. E. 842, 844; George v. Quincy, O. & K. C. R. Co., 179 Mo. App. 283, 167 S. W. 153; Baltimore & Ohio Southwestern Railway Co. v. Little, 149 Ind. 167, 172, 173, 48 N. E. 862; Harley v. Louisville & N. R. Co. (C. C.) 57 F. 144; 51 C. J. 372."[2]

The railroad rules define a yard as:

"A system of tracks within defined limits provided for the making up of trains, storing of cars, and other purposes, over which movements not authorized by time-table or train order may be made, subject to the prescribed signals and rules or special instructions."

Under either of the foregoing definitions, the evidence is sufficient to support the factual finding that appellant's facilities as actually used in the City of Osceola constitute a "yard" as that word is employed in the statute under consideration. Affirmed.

[2] See, also, Order of Ry. Conductors v. Swan, et al., 329 U. S. 520, 67 S. Ct. 495, 91 L. Ed. 471 (in which appears a stipulated definition of a railroad yard); and see also the words "railroad yard" in Words and Phrases, Vol. 36, p. 73 and "yard" in Words and Phrases, Vol. 45, p. 639.